308 So.2d 236 (1975)
Donald McNeil
v.
STATE of Mississippi.
No. 48167.
Supreme Court of Mississippi.
February 24, 1975.
*238 Firnist J. Alexander, Jr., Jackson, for appellant.
A.F. Summer, Atty. Gen., by Billy L. Gore, Special Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, INZER and BROOM, JJ.
GILLESPIE, Chief Justice.
Convicted in the Circuit Court of Forrest County of murder, Donald McNeil appeals to this Court. We reverse his conviction and remand for a new trial.
During the early morning hours of October 20, 1973, the body of Martha Fowler was found floating in several feet of water in a gravel pit near the City of Hattiesburg. Her automobile was parked nearby and apparently efforts had been made to set it on fire. There were indications that the body had been dragged through the sand from the parked automobile to the edge of the water. The victim's body contained marks in the throat area and an autopsy revealed that she died of suffocation. Other than defendant's confession, the circumstantial evidence tending to prove his guilt included among other things (1) his finger print on the inside of the rear window of the victim's car, (2) an unusual cap with identifying marks on it found at the murder scene, (3) the presence of both victim and defendant at the Wagon Wheel Restaurant about closing time on the evening before discovery of the body, (4) evidence tending to prove the trousers worn by defendant the night of the murder covered with sand, and (5) the purchase by defendant the next day of a cap similar to the one found at the murder scene.

I.
Defendant assigns as error the admission of a confession. It is argued that the state failed to comply with the following rule stated in Agee v. State, 185 So.2d 671 (Miss. 1966), and many other cases:
... When, after the state has made out a prima facie case as to the voluntariness of the confession, the accused offers testimony that violence, threats of violence, or offers of reward induced the confession, then the State must offer all the officers who were present when the accused was questioned and when the confession was signed, or give an adequate reason for the absence of such witness. 185 So.2d at 673.
On the motion to suppress the confession, defendant testified that the district attorney came into the room where defendant was being interrogated by the officers. The district attorney, according to defendant, said: "We know you done done it, ... and the best thing that we know you need help, and the best thing you can do is go on and cooperate and you may get some type of leniency, or something like that... ."
The district attorney never took the stand to deny this statement. The defendant was the last witness called on the suppression hearing. No witness denied under oath this specific statement attributed to the district attorney. Prior to the suppression *239 hearing, or at the beginning thereof, the district attorney dictated into the record an unsworn statement that he went to the interrogation room where defendant was seated between two officers but could not recall a conversation with the defendant or anyone else.
The state failed to refute defendant's testimony that the district attorney offered the reward of leniency if defendant would cooperate with the officers. For this reason the confession was inadmissible and the case must be reversed. The district attorney's statement at the beginning of the suppression hearing did not constitute compliance with the rule.
The state failed to follow the requirements of the law for the admission of a confession. No attempt was made to prove a prima facie case of voluntariness at the beginning of the hearing. Rather, defendant went forward with the cross-examination of most of the officers and then offered the defendant, who was the last witness on the suppression hearing. The officers' testimony, given before the defendant testified, was sufficient to make a prima facie case as to voluntariness, but there was no testimony specifically denying defendant's testimony of threats and inducements. On a retrial, the established procedure should be followed at the suppression hearing.

II.
Over defendant's objection, Officer Hopstein testified that he went to the Wagon Wheel Restaurant during his investigation where the employees told him that a black man with certain physical characteristics (resembing the description of defendant) was at the Wagon Wheel about closing time on the night of the murder at about the same time the victim was there. Defendant assigns as error the admission of this evidence on the ground that it was hearsay. This assignment has merit. The court erred in admitting this hearsay evidence. It had been previously admitted during the hearing on the motion to suppress evidence held prior to the trial on the merits and at that time it was admissible on the issue of the validity of the arrest. But this evidence was clearly inadmissible at the trial. It was the only testimony establishing a vital link in the chain of circumstantial evidence and it cannot be said that this testimony was harmless.

III.
Defendant contends that the trial court erred in overruling his motion for a mistrial after a ruling that the shorts worn by defendant at the time of arrest and samples of his hair furnished by defendant after his arrest were inadmissible. The witnesses had already testified as to the finding of Caucasian hair on the shorts and that the hair samples were microscopically similar to those found on the victim's clothing.
If the trial court was correct in excluding the shorts and hair samples, the defendant's argument might have merit inasmuch as the testimony was damaging and it had already been heard by the jury before the evidence was excluded. We are of the opinion, however, that the trial court erred in excluding the evidence.
The record does not indicate why the judge excluded the evidence during the trial on the merits after a contrary ruling on the motion to suppress held prior to the trial. Apparently he was of the opinion that there was no probable cause for the arrest, and the evidence obtained from defendant thereafter was the fruits of an illegal arrest. With this we do not agree. We hold that there was probable cause for the arrest.
The facts on this question which the trial court found to be true, in view of his finding on the motion to suppress, are as next stated.
Defendant was known to both the police and the sheriff's deputies because he was an undercover agent working on narcotic *240 cases. Deputy Sheriff Hopstein was in charge of the investigation of the Fowler murder. He and fellow Deputy Roberson were working together. At the time Officer Hopstein arrested defendant he knew the fact of the crime and (1) that the victim had been at the Wagon Wheel Restaurant about closing time; (2) a black man (defendant is black) came about closing time and used the phone at the Wagon Wheel Restaurant about the same time the victim had come there to get some bread; the man was described as being about six feet tall, wearing red trousers, smoking a crooked pipe, and wearing a black knit cap with tassels; (3) defendant matched the description of the man who used the phone at the Wagon Wheel; (4) defendant stopped Officers Roberson and Hopstein on the afternoon of October 20, got in the car, and asked why Roberson did not pick him (defendant) up when he called from the Wagon Wheel the night before; (5) a black knit cap with tassels on it had been found near the victim's auto at the gravel pit; (6) at the time of the arrest defendant was wearing a black knit cap with tassels (although a different one than found at the murder scene); (7) Roberson knew the cap which defendant was wearing was not the one he had worn a week or so before, and (8) that defendant purchased a cap that morning similar to the one found at the murder scene. Knowing these facts, Officer Hopstein arrested defendant. In our opinion the officer had probable cause for the arrest, and the evidence obtained from him was admissible.

IV.
Defendant assigns as error the admission into evidence of a pair of dirt and sand-caked trousers which were displayed before the jury. It is contended that it was not shown that the trousers were those worn by defendant the night of the murder.
The following tended to show that the trousers in question were worn by the defendant. On October 24, several days after the murder, Officer Hosptein, with the consent of Reverend Tillman, removed a pair of red, flare-bottomed trousers which were covered with sand from under the seat of Tillman's automobile. At the time of the admission of these trousers into evidence, they had not been sufficiently connected with the defendant to justify the trial judge in admitting them into evidence. However, after the trousers were introduced, Officer Miller testified that he saw the defendant at approximately two o'clock in the morning of October 20 on Bowling Street at Reverend Tillman's house, and at that time defendant was "real dirty and was wearing red-looking pants." Miller testified concerning the identity of the trousers that were admitted in evidence and said that if they were not the trousers defendant was wearing, they were some like them. Reverend Tillman testified that defendant came to his home on Friday night after midnight. He did not let defendant in his home but he talked to him through the door and knew his voice. Tillman stated that he telephoned a taxi to take defendant home. In defendant's confession, which had already been admitted in evidence, he stated that he went home and changed clothes sometime during the night of the murder and went over to Pineview Apartments, which the record indicates are on Bowling Street across from Tillman's home.
During the trial on the merits, defendant called the taxi driver who testified that he did not know what color trousers defendant was wearing.
We are of the opinion that although the proper predicate had not been laid for admission of the trousers when they were admitted in evidence, they were sufficiently connected to the defendant by evidence thereafter offered. Since the case must be retried, this procedural defect can be corrected on retrial.
In Stewart v. State, 226 So.2d 911 (Miss. 1969), the Court said that the determination of whether evidence is too remote *241 to be relevant is ordinarily left to the discretion of the trial judge and his decision will not be reversed in the absence of clear indication that he abused his discretion. And in Wilkins v. State, 264 So.2d 411 (Miss. 1972), the Court held that it was within the sound discretion of the trial judge as to whether or not burglary tools found near the scene of a burglary were near enough in time and place to be of probative value.
Defendant cites and relies upon Stewart v. State, 263 So.2d 754 (Miss. 1972), where this Court held that the state had failed to sufficiently identify a pair of handcuffs found about a mile from a robbery. A witness stated the handcuffs were identical to some stolen from him. However, the decision in that case turned on the fact that that the handcuffs contained no identifying marks of any kind. The trousers about which defendant complains had sand on them and the victim's body had been dragged over the sand down to the water. Witnesses testified that the trousers were the same color as those the defendant was wearing, and the proof showed that the defendant was in fact at Reverend Tillman's house early in the morning of October 20, and, therefore, had an opportunity to dispose of the trousers by placing them under the seat of Reverend Tillman's automobile.
Under these circumstances we cannot say that the trial judge abused his discretion in admitting the trousers into evidence.

V.
Defendant filed appropriate motions to require the district attorney to produce and allow an inspection of any and all evidence of every kind which might be exculpatory or assist the defense in the preparation of the case. The district attorney undertook to comply with this motion but, nonetheless, failed to either produce or advise counsel for the defendant of the fact that a billfold was found in the pocket of the victim's car which did not belong to the victim or the defendant, but apparently belonged to a male resident of the City of Hattiesburg. This fact was not discovered by defense counsel until he cross-examined Officer Hopstein at the hearing on the motion to suppress. It was the duty of the district attorney to advise the attorney for the defendant of the facts concerning this billfold. The record is not clear as to how this billfold happened to be in the victim's automobile. Apparently it had been stolen along with a credit card contained therein which bore the name of the owner. As unsatisfactory as the record is on this question, it is manifest that the defendant's counsel was entitled to information concerning this billfold prior to the time he received it, so that he could properly investigate its significance, if any, to the case. This question, of course, cannot recur on a new trial since defendant's counsel will have had ample time to make whatever use is appropriate of this evidence.
Several other questions are raised by the defendant which have been carefully considered and found to be without merit. For the reasons stated, the case is reversed and remanded for a new trial.
Reversed and remanded.
RODGERS, P.J., and PATTERSON, SMITH, ROBERTSON, SUGG and WALKER, JJ., concur.