# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CT-00180-SCT

*CYNTHIA BURFORD a/k/a CYNTHIA LAURINE BURFORD*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/18/2018 |
| TRIAL JUDGE: | HON. CHARLES W. WRIGHT, JR. |
| TRIAL COURT ATTORNEYS: | BILBO MITCHELL |
| | PATRICK IAN STUBBS |
| | KATHRYN RAE McNAIR |
| | MARVELL MAURICE GORDON |
| COURT FROM WHICH APPEALED: | CLARKE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: META S. COPELAND |
| | ASHLEY L. SULSER |
| | BARBARA BYRD |
| DISTRICT ATTORNEY: | KASSIE ANN COLEMAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 06/24/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     After a jury trial, Cynthia Burford was convicted of burglary of a dwelling. The

Circuit Court of Clarke County sentenced her to serve fifteen years in the custody of the

Mississippi Department of Corrections and to pay a fine, restitution, and court costs. In

affirming Burford's conviction, the Court of Appeals declined to review her argument that defense counsel had rendered ineffective assistance of counsel by making an untimely motion to suppress her confessions, finding that the argument was appropriate for post-conviction proceedings. **Burford v. State**, 2019-KA-000180-COA, 2020 WL 5094632, at *8 (Miss. Ct. App. Aug. 25, 2020). This Court granted Burford's petition for a writ of *certiorari* to review the issue.

¶2.     We hold that Burford received ineffective assistance of counsel. A video of Burford's confession shows that a peace officer made several threats and promises to Burford. The officer acknowledged during his trial testimony that he had made the threats and promises in an effort to induce Burford's confession. Under the circumstances, defense counsel rendered deficient performance by failing to make a timely motion to suppress the video confession and a subsequent written confession. Burford was prejudiced because a reasonable probability existed that the trial court would have granted a timely motion to suppress the confessions and because the confessions were the primary evidence of Burford's guilt of burglary of a dwelling. But for the admission of Burford's confessions, the State's only evidence of her guilt of burglary was that stolen items were found at her residence and in a car registered to her relative. Because the record affirmatively shows deficient attorney performance and resulting prejudice, we reverse and remand for a new trial.

**FACTS**

¶3.     Burford and Casey Dunnigan[1] were indicted for one count of burglary of a dwelling

---

[1] The record contains alternate spellings of Dunnigan's surname, "Dunnigan" and "Dunigan." For consistency with the Court of Appeals' opinion, we use "Dunnigan."

2

with the intent to commit grand larceny therein, and, alternatively, for the lesser-included offense of grand larceny. Burford was tried separately. At Burford's trial, Clarke County Sheriff's Deputy Eric O'Neil testified that he had investigated a burglary at the home of Katelyn Smith. The home was under renovation, but it had running water and electricity, and Smith stayed there several nights a week. Various construction supplies were located throughout the house. Smith reported that approximately fifty items, most related to the renovation, had been taken, including a window air conditioning unit, power tools, and lumber. Smith provided Deputy O'Neil a list of the missing items. Deputy O'Neil concluded that there had been no forcible entry. Smith had entered her home through the front door, not the side door. The side door, which had been open when Deputy O'Neil arrived, "had a clasp lock where you normally put a lock, and they had put a clasp and string to hold the door secure."[2]

¶4. Deputy O'Neil went on to testify about how Burford and Dunnigan had been developed as suspects. Two days after Smith reported the crime, Deputy Hank Gandy had been involved in a car chase with a red Chevrolet Impala near Smith's residence. Deputy Gandy pursued the Impala down a county road until his quarry wrecked into a fence located on property owned by Dunnigan's mother, Ann Robinson. The Impala's two occupants fled on foot. Dunnigan's ID card was found in the car, and the car was registered to a relative of Burford's. Smith came to the crash scene and identified items inside the Impala as having been among those taken from her home two days before. Deputy O'Neil learned that Burford

---

[2] The opening of a closed, unlocked door has been held to meet the force requirement for the breaking element of burglary. *Moore v. State*, 933 So. 2d 910, 922 (Miss. 2006).

and Dunnigan had been living in a shed behind Ann Robinson's house. A search of the shed revealed the rest of the items missing from Smith's home. Smith identified all the recovered items as her belongings.

¶5.     Burford was arrested, and she gave a statement to Deputy O'Neil the next day. Before taking the statement, Deputy O'Neil read Burford's *Miranda*[3] rights to her, and she signed a rights waiver form. Then O'Neil interrogated Burford and recorded the session on two DVD discs totaling approximately fifty-three minutes of interview time. Deputy Blake Bonner and a case manager, Sheila Johnson, were present. Deputy O'Neil questioned Burford about her possible involvement in the burglary and the car chase. At first, Burford said that Dunnigan had bought Smith's things from someone in Alabama and that she had not known the items had been stolen. Under continued questioning, Burford became emotional. She said that the reason she had fled during the car chase was that she was scared. Despite multiple exhortations from Deputy O'Neil, Deputy Bonner, and Johnson to tell the truth, Burford repeatedly denied any involvement in the burglary or knowledge of who was responsible. As the questioning continued, Deputy O'Neil employed the tactic of making misrepresentations calculated to lead Burford to believe that the evidence of her involvement in the burglary was stronger than it really was. But, also, Burford's interrogators made the following statements and had the following exchanges with Burford:

> Deputy O'Neil: We are giving you the opportunity to tell us the truth and be honest. . . . You need to be forthcoming and tell the truth cause you have dug yourself a hole. Now I've got you on the burglary charge, and I'm going to do the fugitive charge - running, and you looking at a high bond.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

M'kay? You need to help yourself. And the way you help yourself is to tell us the truth . . . .

. . . .

Johnson: How long have you not had [your] children? . . . Guess what's fixing to happen to you. You fixing to lose them altogether. Is that what you want?

Burford: But I can't tell you something I don't know.

Johnson: No, but you can tell the truth.

. . . .

Deputy O'Neil: "You've got a few charges, yes. We are the ones that can help you, ok, get rid of those charges, get the lowest bond possible on those charges, and everything else, but what we need to make those things happen, to get you out of here and get you back to your kids, ok, and not stay in jail until you go to the grand jury or go to trial or whatever, ok, we need the truth. We need help. From you, ok. Anything that you could tell us about any of this."

. . . .

Johnson: You better put your mind on your kids.

. . . .

O'Neil: How can I help you if you don't tell the truth?

. . . .

Johnson: Do you know what just one charge of breaking and entering is? To a dwelling? Twenty-five years. And this man can recommend twenty-five years. And if he recommends it, I can promise you you're gonna get it. Ok. He just asks you to be straight up and honest with him.

. . . .

¶6.     When Burford continued to deny any knowledge of the crime, Deputy Bonner stepped in:

> Bonner (to O'Neil): Man, if she's lying to you, don't waste your time and charge her. Send her to the pen.
>
> O'Neil: I'm trying everything I can.
>
> Bonner (to Burford): As a person, lying digs you a deeper hole. This man over there has got enough evidence to send you to the penitentiary for burglary. The best thing you can do is be honest and get you a lower bond, help you out.
>
> O'Neil: Now that's two officers that's telling you this, and you still want to tell me a lie.

Soon after this exchange, Burford admitted that Dunnigan had gone into Smith's house and removed items while she waited in the car. Burford said she had helped Dunnigan load Smith's belongings into the car. The video reflects that, after Burford confessed, Deputy O'Neil told her that he would recommend to the district attorney that she get rehabilitation instead of prison time. The video captured Deputy O'Neil calling the courthouse to get her a bond.

¶7.     Deputy O'Neil testified that, after Burford's interview, Johnson typed a purported summary of what Burford had said, and Burford read and signed it. The summary said that

> [o]n February 21st or 22nd, 2007 myself, Cynthia Burford and Casey Dunigan went to . . . , Quitman and broke into a house and took stuff out of the house and shed. We took it to . . . where we were living and hid it in the white shed that is on the side house. Casey went back to the shed and moved some stuff. Ann (Casey's mom) fed us while we were there. Jeremy and Angie Dunigan took us to Natchez MS and that is where we were caught.

6

On cross-examination, Deputy O'Neil recognized that, although the typed statement stated that Burford had gone inside Smith's house, Burford had not said in the interview that she had gone inside. Deputy O'Neil testified that, if Burford had perceived a discrepancy between what she had said and what Johnson had written, she should not have signed the statement.

¶8. Burford did not file a pretrial motion to suppress her confessions. The trial court admitted into evidence, without objection, Burford's signed statement and two DVD discs that the State represented contained Burford's interview. After the exhibits were admitted, the State played the first DVD disc for the jury. Then, the State published the second DVD disc but, as it played, the prosecutor realized that it was a duplicate of the first disc. The State moved to substitute a third DVD disc that contained the second part of Burford's interview, in which she confessed to being an accomplice to burglary. The trial court permitted the State to withdraw the duplicated disc and to offer the third disc as another exhibit. At that point, Burford objected on the ground that her confession was involuntary:

> MS. McNAIR: Judge, at this point, I move to object to the entry of the second video based on the fact that they offered her a lower bond, threatened her with a higher bond, threatened that her kids would be taken away forever and threatened her with 25 years to serve in the pen.
>
> I don't think it is a voluntary statement, and for that reason I would move to—dismiss the second part of the interview or to make it—or to object to its entry into the record.
>
> THE COURT: I have reviewed the file. I saw no motion to suppress any statement of the defendant.
>
> Did you file a motion?

MS. McNAIR: No, Your Honor.

THE COURT: And when those two parts were offered as exhibits, you had no objection.

MS. McNAIR: That's correct, Your Honor.

THE COURT: And now, after they have been played, you are bringing up an objection to the second part but not the first part?

MS. McNAIR: That's correct, Your Honor.

THE COURT: Did you have the video prior to trial?

MS. McNAIR: Yes, sir. I got them last week.

THE COURT: Did you review them?

MS. McNAIR: Yes, sir.

THE COURT: And did you review part 2?

MS. McNAIR: Yes, sir.

THE COURT: Then all the issues that you are describing to the court were part of your pretrial preparation prior to this trial?

MS. McNAIR: That's correct.

THE COURT: Then your objection is noted and overruled.

¶9. After the defense lawyer's motion was overruled, she sought to prove to the jury that Burford's confessions were involuntary. On cross-examination, the lawyer asked Deputy O'Neil whether any threats or promises had been made to Burford in exchange for her confession, and he testified as follows:

Q. Now, you made several promises or suggestions to her that you would get her a lower bond; isn't that right?

8

A. Yes, ma'am.

Q. And you made suggestions to her that her bond would be really high if she didn't confess; isn't that correct?

Q. Right.

. . . .

Q. My question was: You threatened her with a higher bond if she didn't confess; isn't that correct?

A. I think what I implied, she could go from a high to a low bond. It wasn't a threat.

Q. She could go to a low bond if she would just confess; is that right?

A. I cannot say what a judge would set the bond at, so I'm—my statement was more of it can be a high or low bond, but I would try to seek the lowest bond that I could.

Q. But it would be low if she would confess, right?

A. I would try my best to help her if I could.

Q. And you would agree that y'all offered to drop charges if she would confess; isn't that correct?

A. I believe we talked about the felony fleeing charge.

Q. And that it would be dropped if she would just confess?

A. If she told the truth, we would work with that charge and do what we could.

Q. As long as that truth was a confession, correct?

A. Yes.

. . . .

Q. You offered her rehab if she would confess?

9

A. My intentions [were] to talk to the DA to see if we could get her into some rehab.

¶10. Burford testified in her defense that she had assisted Dunnigan because she had been afraid of him. After Burford's conviction of burglary, she filed a posttrial motion for a new trial arguing that her confessions were involuntary. The trial court denied the motion, and Burford appealed. This Court assigned the appeal to the Court of Appeals, which affirmed. *Burford*, 2020 WL 5094632, at *9. Before the Court of Appeals, Burford argued that the trial court had erred by not holding a hearing outside the jury's presence to determine the voluntariness of her written and recorded confessions. *Id.* at *5. The Court of Appeals recognized that a defendant wishing to challenge the voluntariness of a confession is not required to file a pretrial motion to suppress but may raise the issue for the first time at trial. *Id.* at *6 (citing *Cox v. State*, 586 So. 2d 761, 763 (Miss. 1991)). The Court of Appeals found, however, that Burford's challenge to her confessions was untimely because she had not objected until after her confessions had been admitted into evidence. *Id.* The DVDs and written statement were admitted during Deputy O'Neil's testimony. Burford made her objection after the written statement had been admitted into evidence and described to the jury and after the first DVD disc had been played. Notably, Burford's lawyer objected only to the admission of the DVD containing the second part of her interview and not to the admission of the first DVD or the written confession. The Court of Appeals held that, because Burford's objection had been untimely, the issue was procedurally barred on appeal. *Id.* at *7.

10

¶11. Burford argued also that defense counsel had rendered ineffective assistance of counsel by failing to make a timely motion to suppress the DVD recordings and written statement. *Id.* The Court of Appeals found that the facts supporting Burford's argument were not fully apparent from the record and, for that reason, her argument could not be addressed on appeal, but could be raised in post-conviction proceedings. *Id.* at *8. The Court of Appeals notified Burford that, if she chose to pursue post-conviction relief, she first had to seek and obtain permission from this Court to do so. *Id.* (citing Miss. Code Ann. § 99-39-7 (Rev. 2015)).

## DISCUSSION

¶12. This Court granted Burford's petition for a writ of *certiorari* to address the Court of Appeals' determination that insufficient evidence existed to address Burford's constitutional claim of ineffective assistance of counsel.

### A. Test for Determining Ineffective Assistance of Counsel

¶13. Both the United States Constitution and the Mississippi Constitution guarantee a criminal defendant's right to the effective assistance of counsel. U.S. Const. amend. VI; *id.* amend. XIV; Miss. Const. art. 3, § 26; *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A two-prong test applies to the question of whether defense counsel was constitutionally ineffective. The defendant has the burden of proof to show that (1) "counsel's performance was deficient[,]" and (2) "the deficient performance prejudiced the defense." *Taylor v. State*, 167 So. 3d 1143, 1146 (Miss. 2015) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 687). "[T]he proper standard for

11

attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687. To be deemed deficient performance, counsel's performance must have "[fallen] below an objective standard of reasonableness." *Id.* at 688. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that "the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)). "But, while reasonable tactical decisions should be given great deference, the word 'strategy' is not an incantation that frees a decision of counsel from further scrutiny." *Giles v. State*, 187 So. 3d 116, 120 (Miss. 2016) (citing *Richards v. Quarterman*, 566 F.3d 553, 566 (5th Cir. 2009)). "Rather, the decisions of counsel must be considered to determine whether the strategy was reasonable." *Id.* (citing *Richards*, 566 F.3d at 566).

¶14. Regarding the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶15. As recognized by the Court of Appeals, the general rule is that claims of ineffective assistance of counsel are raised in post-conviction proceedings. *Giles*, 187 So. 3d at 121 (citing *Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008)). But if the facts are fully apparent from the record, such a claim may be raised on direct appeal. M.R.A.P. 22(b). When an appellant, like Burford, "is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration

12

of the issues in post-conviction proceedings." *Id.* This Court will address the issue on direct appeal and order a new trial if "the record affirmatively shows ineffectiveness of constitutional dimensions . . . ." ***Read v. State***, 430 So. 2d 832, 841 (Miss. 1983).

### B. Standard for Determining the Voluntariness of a Confession

¶16. Burford argues that, by not making a timely motion to suppress her confessions, defense counsel deprived her of the opportunity to obtain a ruling excluding the confessions as involuntary because they were induced by threats and promises. "Whe[n] a criminal defendant challenges the voluntariness of a confession, he has a due process right to a reliable determination that the confession was in fact voluntarily given." ***Stokes v. State***, 548 So. 2d 118, 121 (Miss. 1989) (citing ***Jackson v. Denno***, 378 U.S. 368, 377, 84 S. Ct. 1774, 12 L. Ed. 2d 908, 915 (1964)). The trial court must hold a hearing outside the presence of the jury to determine the admissibility of the confession. ***Wilson v. State***, 936 So. 2d 357, 362 (Miss. 2006). At the hearing, the State bears the burden to prove, beyond a reasonable doubt, that the confession was voluntary. *Id.* The State makes a *prima facie* case that a confession was voluntary "by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer of reward." ***Johnson v. State***, 129 So. 3d 148, 151 (Miss. 2013) (internal quotation mark omitted) (quoting ***Manix v. State***, 895 So. 2d 167, 180 (Miss. 2005)). If, after the State makes a *prima facie* case, the defendant testifies that the confession was induced by threats, promises, or offer of reward, then the burden shifts back to the State to rebut the defendant's testimony with testimony from "those persons who are claimed to have induced a confession through

some means of coercion[.]" ***Thorson v. State***, 653 So. 2d 876, 888 (Miss. 1994) (quoting

***Abram v. State***, 606 So. 2d 1015, 1030 (Miss. 1992), *overruled on other grounds by **Foster***

***v. State***, 961 So. 2d 670, 672 (Miss. 2007)). "A defendant's confession may be allowed into

evidence over objection only where the trial judge finds the confession was intelligently,

knowingly, and voluntarily made, rather than bargained for with promises, threats, or

inducements by law enforcement officers." ***Johnson***, 129 So. 3d at 150 (footnotes omitted)

(citations omitted). The trial court must determine from the totality of the circumstances

whether the confession was "the product of the accused's free and rational choice." ***Porter***

***v. State***, 616 So. 2d 899, 907-08 (Miss. 1993) (citing ***United States v. Rogers***, 906 F.2d 189

(5th Cir. 1990)).

¶17.    "If a confession is the result of threat, inducements or promises—however slight—it

is not voluntary," ***Manix***, 895 So. 2d at 180 (citing ***Dunn v. State***, 547 So. 2d 42, 45 (Miss.

1989)), and it is "inadmissible under the constitutional standards." ***Id.*** The test of whether

an inducement is sufficient to render a confession involuntary is whether the promise or

inducement "is of a nature calculated under the circumstances to induce a confession

irrespective of its truth or falsity[.]" ***Robinson v. State***, 247 Miss. 609, 612-13, 157 So. 2d

49, 51 (1963). Exhortations by police for the suspect to "tell the truth" or to "come clean" are

allowed. ***Flowers v. State***, 601 So. 2d 828, 830 (Miss. 1992) (internal quotation marks

omitted). But attempts by law enforcement officers to induce a confession by promising to

obtain a bond or a lighter sentence for the accused are impermissible. ***McNeil v. State***, 308

So. 2d 236, 238-39 (Miss. 1975); ***Clash v. State***,146 Miss. 811, 112 So. 370, 370 (1927).

14

This Court has held that a defendant's unrefuted testimony that a district attorney promised leniency in exchange for his cooperation rendered a confession inadmissible. *McNeil*, 308 So. 2d at 238-39. In *Clash v. State*, a private citizen testified that no threats or promises had been made to the defendant to induce his confession except that "if he would tell us about the money, and return it, we would let him out of jail on bond." *Clash*, 112 So. at 370 (internal quotation mark omitted). This Court held that the promise to release the defendant from jail on bond was a sufficient inducement to render the confession involuntary. *Id.*

> A confession made after the accused has been offered some hope of reward if he will confess or tell the truth cannot be said to be voluntary. This Court has long adhered to the rule that when the offer of reward or hope of leniency is made by a private individual the same rule applies. . . . In *Johnson v. State*, 89 Miss. 773, 42 So. 606 (1906), private citizens told the accused that, ". . . it would be better for him to confess, as it would go lighter with him if he told the truth." The confession that followed these statements by private citizens was held inadmissible.

*Abram*, 606 So. 2d at 1032 (quoting *Agee v. State*, 185 So. 2d 671, 674 (Miss. 1966)).

¶18. Threatening the defendant with a greater penalty if she does not confess likewise can constitute an improper inducement. In *Abram*, a minister told the defendant that "a confession was in his best interest" and that "it might be easier on [him] if he cooperated." *Id.* at 1021-22. Then a sheriff stressed the benefits of cooperating, including a chance for mercy, in contrast with the consequences of not cooperating, namely, the death penalty. *Id.* at 1022, 1032. This Court held "that the various statements and impressions conveyed to Abram proximately caused him to confess" and that his confession had been involuntary. *Id.* at 1033-34.

### C. Ineffective Assistance of Counsel for Failure to File a Motion to Suppress

¶19. An attorney's "mere failure to file a motion to suppress" a confession does not constitute ineffective assistance of counsel. *Shinstock v. State*, 220 So. 3d 967, 971 (Miss. 2017). Generally, the decision to file a suppression motion "fall[s] within the ambit of trial strategy." *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995) (citing *Murray v. Maggio*, 736 F.2d 279 (5th Cir.1984)). But "counsel may be deemed ineffective where counsel fails to move to suppress evidence obtained in violation of the accused's constitutional rights if the petitioner shows that the motion would have been meritorious and that prejudice resulted from the evidence's admission." *Crawford v. State*, 218 So. 3d 1142, 1161 (Miss. 2016) (citing *Davis v. State*, 743 So. 2d 326, 336 (Miss. 1999)). "The accused has been prejudiced if there is a reasonable probability that the outcome of the trial would have been different without the evidence." *Pace v. State*, 242 So. 3d 107, 120 (Miss. 2018) (citing *Evans v. Davis*, 875 F.3d 210, 218 (5th Cir. 2017)).

¶20. This Court applied these principles in *Pace*, in which the defendant argued that defense counsel had been ineffective for failing to object to the admissibility of his confession. *Id.* at 120. Because the facts were fully apparent from the record, we reviewed the argument on direct appeal. *Id.* Before Pace's confession was admitted, the trial court held a hearing outside the presence of the jury at which the officers who had been present at the interview testified that no threats or promises had been made to induce the confession and that Pace had waived his *Miranda* rights. *Id.* The officers testified also that Pace had not requested counsel. *Id.* After the officers' testimony, defense counsel said that he had no

16

objection to the admission of the confession. *Id.* But at trial, one of Pace's witnesses testified that he had been present at Pace's confession and that Pace had asked for a lawyer. *Id.* Pace argued that, in light of the witness's trial testimony that Pace had asked for a lawyer during the interview, defense counsel had rendered deficient performance by failing to present the witness's testimony at the suppression hearing. *Id.* He contended that he had been prejudiced because, if the witness had testified at the suppression hearing that the police had continued questioning Pace after he had asked for an attorney, the trial court would have excluded his confession. *Id.*

¶21.    This Court rejected Pace's argument. *Id.* at 121. Because the officers had testified that Pace never requested counsel, even if the witness had testified that he had requested counsel, the trial court would have been faced with conflicting testimony. *Id.* Because the trial court would have been free to accept the testimony of the officers and to reject that of Pace's witness, Pace failed to show a reasonable probability that, but for counsel's error, the trial court would have excluded his confession. *Id.* For that reason, the Court found that Pace had not proved that, but for counsel's failure to object to the admission of his confession and to present the testimony of the witness, the result of the proceeding would have been different. *Id.*

### D.    *Burford's counsel rendered deficient performance.*

¶22.    As in *Pace*, the facts undergirding Burford's ineffective assistance of counsel claim are fully apparent from the record and, therefore, are subject to review on direct appeal. Burford argues that her trial counsel failed to timely move to suppress her confessions

17

despite strong evidence that the confessions had been induced by threats and promises by the interrogating officers. We find that the record shows that trial counsel rendered deficient performance by not making a timely objection to the admissibility of her client's confessions. The DVD recording of Burford's interview reveals that Deputy O'Neil, Deputy Bonner, and a case manager, Johnson, made several threats and promises to Burford before she confessed. Deputy O'Neil repeatedly told Burford that she was facing a high bond but that, if she confessed, he would seek a lower bond for her. Johnson told her that she needed to be honest with Deputy O'Neil because he could recommend the maximum sentence and, if he did so, she would receive the maximum. Both O'Neil and Johnson told Burford that if she did not cooperate, she would remain in jail, she would not be released on bond, and her children would be taken away. Deputy Bonner told Burford that if she were honest, she would get a lower bond. After those statements were made to Burford, she confessed to being an accomplice to burglary, and she signed a written statement to that effect. The video shows that, in accordance with Deputy O'Neil's promises to Burford, after her recorded confession he called the courthouse to obtain a bond for her. The threats and promises made by the officers and case manager were fully audible on the DVDs and provided classic examples of the types of improper inducements to confess that have been found to render a confession involuntary. *Abram*, 606 So. 2d at 1032; *McNeil*, 308 So. 2d at 238-39 (Miss. 1975); *Clash*, 112 So. at 370.

¶23. In light of the threats and promises apparent on the DVDs, no strategic reason existed for Burford's defense counsel to reject a strategy of moving to suppress the confessions. We

observe that, at a pretrial hearing, defense counsel informed the court that she had planned to file a motion to suppress but decided not to after viewing the DVD recordings of Burford's confession. Defense counsel mentioned a search and seizure issue and never said that she had considered and rejected an argument that the confessions had been involuntary. Indeed, counsel's strenuous but untimely objection to the admission of the second part of Burford's recorded confession at trial and her attempt to argue involuntariness to the jury evince her belief that the involuntariness argument was viable. But even if defense counsel had made a pretrial decision not to seek exclusion of the confessions on the basis of voluntariness, there is no objectively reasonable explanation for that disastrously defective decision. Threats and promises by the police are a mainstay of obtaining a ruling excluding a confession as involuntary. Under the circumstances before us, any competent lawyer would have sought exclusion of Burford's confessions as involuntary, and the failure to do so was deficient performance. We reject the dissent's contention that further investigation into defense counsel's strategy would have any possibility of redeeming counsel's performance under *Strickland*.

### E.     *Burford suffered prejudice.*

¶24.    Turning to prejudice, the record discloses a reasonable probability that a timely motion to exclude the confessions would have been granted. In *Pace*, this Court found that the defendant had not shown prejudice from defense counsel's failure to present testimony that Pace had asked for a lawyer during his interview because the officers who interviewed Pace had testified that he never requested counsel. *Pace*, 242 So. 3d at 121. Because the trial court

19

could have relied on the testimony of the officers, Pace had not shown that the trial court probably would have excluded his confession. *Id.* This case is very different. Here, Deputy O'Neil testified that he *did* make promises to Burford. When asked whether he had promised her a lower bond if she confessed, he responded, "[y]es, ma'am." When asked whether he had suggested that her bond would be high if she did not confess, he said, "[r]ight." He testified that he had told Burford that she could "go from a high bond to a low bond" and that he "would seek the lowest bond that [he] could." Further, Deputy O'Neil testified that he had told Burford that, if she told the truth, he would help with her felony fleeing charge. Therefore, unlike in *Pace*, in which officers rendered sworn testimony that Pace never asked for counsel, here an officer who interviewed Burford acknowledged under oath that, in fact, he had promised Burford leniency in exchange for her confession.

¶25.    Due to the threats and promises shown on the DVD recordings of Burford's interview and Deputy O'Neil's testimony confirming that he had made multiple promises to Burford conditioned on her confessing to him, a reasonable probability exists that the trial court, considering the totality of the circumstances, would have excluded Burford's confession as involuntary if defense counsel had made a timely objection. If defense counsel had objected, Burford's confessions would have been inadmissible unless the State had been able to meet its burden to prove the voluntariness of her confessions beyond a reasonable doubt. *Wilson*, 936 So. 2d at 362. The State makes a *prima facie* case of voluntariness with the testimony of an officer or someone familiar with the facts that no threats or promises were made. *Johnson*, 129 So. 3d at 151 (quoting *Manix*, 895 So. 2d at 180). But, here, one of the

20

interrogating officers testified that threats and promises *were* made. That testimony would have stymied the State's ability to make a *prima facie* case at a suppression hearing. Deputy O'Neil's candid acknowledgment of his misconduct was not contradicted by anyone. The DVD recordings show that Burford did not confess until after numerous threats and promises had been brought to bear upon her.

¶26.    We do not hold that Burford's confessions were inadmissible. We do hold that, under the undisputed facts evident from the record, there is a reasonable probability that the trial court, if presented with a timely opportunity to rule, would have found from the totality of the circumstances that Burford's written and recorded confessions had been induced by the threats and promises, rendering them involuntary and inadmissible. Moreover, the confessions were the primary evidence that Burford was guilty of burglary. Without the confessions, the State's only evidence connecting her with the crime was that the stolen items had been found under the living quarters she shared with her boyfriend and that two people had fled from the police two days after the crime in a car registered to Burford's relative that contained other stolen items. That proof falls short of meeting the elements of burglary of a dwelling. Miss. Code Ann. § 97-17-23 (Rev. 2020). The elements of burglary are: "(1) unlawful breaking and entering, and (2) intent to commit a crime therein." ***Ward v. State***, 285 So. 3d 136, 140 (Miss. 2019) (internal quotation marks omitted) (quoting ***Jackson v. State***, 90 So. 3d 597, 604 (Miss. 2012)). Without Burford's confessions, the State may have been able to show that Burford possessed stolen property, but it would have been severely crippled in its ability to prove that Burford broke and entered Smith's house with the intent to commit

a crime therein. Therefore, a reasonable probability exists that the outcome of Burford's trial would have been different but for defense counsel's failure to make a timely motion to suppress or to make a timely objection to the admission of Burford's confessions.

¶27.   Despite the foregoing analysis and a clear finding of a reasonable probability that the outcome of the trial would have been different, the dissent asserts that the majority does not determine whether defense counsel's failure to object timely to the admission of Burford's confessions had a reasonable probability of changing the outcome of her trial. But we did indeed make that very determination. The dissent would decide the issue differently. It opines that no reasonable probability exists that the outcome would have been different because the elements of burglary were met by Burford's own testimony in her defense case. Burford testified that she was present during the burglary, that she assisted with loading items into the vehicle, and that she unloaded the items at her residence.

¶28.   The dissent's analysis is flawed because it does not recognize that if Burford's confessions had been excluded, the State would have had scant evidence with which to prove the essential elements of burglary in its case in chief. *Ward*, 285 So. 3d at 140. This Court's duty under the prejudice prong of *Strickland* is to review the totality of the circumstances concerning the proceedings to determine whether counsel's errors prejudiced the defense. *McQuarter v. State*, 574 So. 2d 685, 687 (Miss. 1990). Because the thrust of Burford's trial testimony was to provide an explanation of what she had said in her confessions, it is reasonably probable that, but for the confessions, Burford would not have elected to incriminate herself by testifying. *Brooks v. Tennessee*, 406 U.S. 605, 608, 92 S.

22

Ct. 1891, 32 L. Ed. 2d 358 (1972) (recognizing that the accused's decision on whether to testify is undertaken by the accused and his or her counsel after making a "full survey" of the state's evidence (quoting *Bell v. State*, 66 Miss. 192, 5 So. 389 (1889))). Therefore, a reasonable probability exists that Burford would not have testified if her confessions had been excluded, and no further investigation into that question is necessary under *Strickland*.[4] The record before us presents such an extreme and obvious case of ineffective assistance of counsel that no additional facts that might be adduced during post-conviction proceedings reasonably could be expected to erase or diminish the magnitude of the ineffectiveness that is apparent from the record. Without doubt, the record affirmatively shows a reasonable probability that the outcome of Burford's trial would have been different if defense counsel had moved to suppress her confessions in a timely manner.

---

[4] The dissent believes that this issue is appropriate for post-conviction proceedings, presumably so that Burford could say whether she would have testified if her confessions had been excluded. But *Strickland* instructs that we are to review the totality of the circumstances and to determine whether, but for counsel's error, a reasonable probability exists that the outcome of the proceedings would have been different. We can say confidently that, if counsel had secured the suppression of Burford's confessions, there is a reasonable probability that she would not have supplied the State with crucial evidence by testifying.

The application of *Strickland* to determine the prejudicial effect of counsel's failure to make a timely motion to suppress Burford's confessions is not speculation but a proper assessment of whether a reasonable probability exists under the totality of the circumstances that the outcome of the proceedings, including Burford's decision about testifying, would have been different. This Court has located no case in which a reviewing court has assessed prejudice with reference to the defendant's incriminating testimony, as the dissent advocates, rather than assessing the strength of the State's remaining evidence had a motion to suppress a confession been granted. Because the record affirmatively shows error of constitutional dimensions, this case is ripe for decision now.

**CONCLUSION**

¶29.    We hold that Burford's defense counsel rendered deficient performance by failing to make a timely objection to the admission of her appallingly flawed confessions and that, but for counsel's error, it is reasonably probable that the outcome of the proceedings would have been different. Because the record affirmatively shows ineffectiveness of constitutional dimensions, we reverse the decision of the Court of Appeals and the judgment of the Circuit Court of Clarke County, and we remand the case to the Circuit Court of Clarke County for a new trial.

¶30.    **REVERSED AND REMANDED.**

**KING, P.J., COLEMAN, BEAM AND ISHEE, JJ., CONCUR.  RANDOLPH, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MAXWELL, CHAMBERLIN AND GRIFFIS, JJ.**

**RANDOLPH, CHIEF JUSTICE, DISSENTING:**

¶31.    Facts are not readily apparent in the record to support the majority's conclusion that the record clearly supports finding Burford's right to effective assistance of counsel was infringed. "This Court may only address [ineffective-assistance-of-counsel claims] on direct appeal if the facts regarding the issues raised are fully apparent from the record." ***Stevenson v. State***, 283 So. 3d 697, 700 (Miss. 2019) (citing ***Hawkins v. State***, 255 So. 3d 1264, 1270 (Miss. 2018)). The Court of Appeals opined that Burford's arguments were not fully developed and that it lacked a complete picture of the facts necessary for review; thus, such claims would be appropriate for postconviction proceedings. ***Burford v. State***, 2019-KA-000180-COA, 2020 WL 5094632, at *8 (Miss. Ct. App. Aug. 25, 2020). I agree with Judge

24

Greenlee's conclusion, which is inapposite to the majority's conclusory statement regarding why Burford might have testified. Maj. Op. ¶¶ 27–28. The majority's speculation might well be accurate, but we cannot know that as a fact absent the record's being developed. This record reflects only that Burford did testify. In this proceeding, we are bound by the record, not speculation.

¶32. Both our constitution and the federal Constitution guarantee a right to effective assistance of counsel in criminal trials. Miss. Const. art. 3, § 26; U.S. Const. amend. VI; *id.* amend. XIV; ***Lockhart v. Fretwell***, 506 U.S. 364, 369, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993) (quoting ***United States v. Cronic***, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)). We have held that any claim made "for ineffective assistance of counsel must meet the two-prong test outlined in ***Strickland v. Washington***, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)." ***Harrell v. State***, 947 So. 2d 309, 313 (Miss. 2007) (citing ***Bennett v. State***, 933 So. 2d 930, 943 (Miss. 2006); ***Sipp v. State***, 936 So. 2d 326, 334 (Miss. 2006); ***Byrom v. State***, 927 So. 2d 709, 714 (Miss. 2006)). This two-prong test demands that a defendant "demonstrate that his counsel's performance was deficient, and that the deficiency prejudiced the defense of the case." ***Id.*** (quoting ***Ransom v. State***, 919 So. 2d 887, 889 (Miss. 2005)).

¶33. The prejudice required by the second prong is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** (internal quotation marks omitted) (quoting ***Mohr v. State***, 584 So. 2d 426, 430 (Miss. 1991)). Therefore, "[a]bsent some effect of challenged conduct on the reliability of the trial

process, the Sixth Amendment guarantee is generally not implicated." ***Lockhart***, 506 U.S. at 369 (internal quotation marks omitted) (quoting ***Cronic***, 466 U.S. at 658).

¶34.    The majority fails to adequately address the prejudice prong of the mandated analysis. Rather than assessing whether Burford's counsel's failure to timely object would have changed the outcome of the trial, the majority focuses on whether or not Burford's confession would have been excluded had a motion been made.  Maj. Op. ¶ 25. The record before us contains clear testimony establishing (1) that Burford fled from a car wreck and that the destroyed vehicle contained stolen property, (2) that the dwelling where Burford was residing contained the same stolen property, (3) that Burford was present while the burglary occurred and assisted with loading the same stolen items into her vehicle, and (4) that Burford then unloaded the same stolen items into the dwelling where she was residing. A portion of this testimony is from Burford's own lips after she testified in her defense. The majority fails to address the aforementioned testimony. Maj. Op. ¶ 25. Based on this testimony alone, "a reasonable trier of fact could find the essential elements" of burglary beyond a reasonable doubt, meaning the evidence was sufficient to support Burford's conviction. ***Willis v. State***, 300 So. 3d 999, 1007 (Miss. 2020) (citing ***Lenoir v. State***, 222 So. 3d 273, 279 (Miss. 2017)). The record before us fails to establish that the exclusion of Burford's confession would have changed the result of the proceeding. ***Harrell***, 947 So. 2d at 313 (quoting ***Mohr***, 584 So. 2d at 430).

¶35.    Several questions cannot be answered based on this record: Why did Burford's counsel fail to file a motion to suppress? Why did Burford's counsel allow the playing of the

26

first DVD and object to the second DVD? Why did Burford elect to testify in her own defense? This record fails to answer these and other questions. The record alone fails to demonstrate that Burford's counsel was deficient. The record fails to demonstrate that prejudice resulted. I would affirm the judgments of the Court of Appeals and of the Clarke County Circuit Court and would not address ineffective assistance of counsel on direct appeal.

**MAXWELL, CHAMBERLIN AND GRIFFIS, JJ., JOIN THIS OPINION.**