# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-01341-COA

**WILLIAM WOFFORD A/K/A WILLIAM SCOTT WOFFORD**          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

DATE OF JUDGMENT:      10/28/2020
TRIAL JUDGE:      HON. DEBRA W. BLACKWELL
COURT FROM WHICH APPEALED:      AMITE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      WAYNE DOWDY
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
     BY: ALLISON KAY HARTMAN
DISTRICT ATTORNEY:      RONNIE LEE HARPER
NATURE OF THE CASE:      CRIMINAL - FELONY
DISPOSITION:      AFFIRMED - 05/03/2022
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., GREENLEE AND EMFINGER, JJ.

### GREENLEE, J., FOR THE COURT:

¶1. William Wofford appeals his convictions and sentences for two counts of burglary of a dwelling. Wofford's issues on appeal include insufficiency of the evidence, improper giving of jury instruction S-3, prohibiting of his witnesses' testimony, and denial of bail pending appeal. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On August 8, 2015, around 9:30 p.m., Buddy Dupuy returned home to find his home had been burglarized. After reporting the burglary to law enforcement, a deputy with the Amite County Sheriff's Department arrived at Dupuy's home sometime after 10:30 p.m. The

following morning, Investigator Daniel Meaux Jr. arrived at Dupuy's home. Dupuy reported that guns, money, and other valuables had been taken from his safe. Although the burglary was investigated, no charges were brought, and no arrests were made until 2018.

¶3. On September 22, 2018, Dupuy received a phone call from one of his ranch hands, Gary Butler, informing him that his home had been burglarized again. Dupuy was in Baton Rouge at the time Butler called him. When Dupuy returned home, he found that a window had been completely knocked out, that the safe from the house was in the back of a Toyota pick-up truck, and that walls, floors, and packages within the house had been destroyed from the safe being towed out of the house.

¶4. After conducting a search of the area, deputies apprehended a person named Michael Weaver at the scene. He was read his *Miranda* rights, but he informed deputies that he did not want to talk with them. The Sheriff's Department also identified Paula Womack as a suspect and located her. After reading Womack her rights, Womack confessed to taking part in the 2018 burglary. Subsequently, Weaver told deputies he wanted to speak with them. According to Investigator Meaux, Weaver confessed to the 2015 burglary and identified Ray McNally and Jamie Dodson as the individuals who had helped him. Weaver also informed deputies that he burglarized Dupuy's home in 2015 and 2018 because William Wofford had recruited him. Deputies interviewed Wofford, who admitted to knowing Weaver. Wofford explained that Weaver had driven trucks for him and that Weaver was leasing an eighteen-wheeler through him to a person named Clarence Lilly.

¶5. Deputies interviewed McNally and Dodson, who confessed to their part in the 2015

burglary. According to Weaver and Womack, a person named Clifton Love had provided them with a place to stay and allowed Womack to use a phone to keep in contact with Weaver as he carried out the 2018 burglary. Deputies also arrested Love. Initially, Weaver claimed that Love knew about the burglary but later recanted his statement, informing deputies that Love had nothing to do with the burglary.

¶6.     An Amite County grand jury returned a six-count indictment for the 2015 and 2018 burglaries.[1] Wofford was indicted in count one of the indictment for the August 8, 2015 burglary and in count two of the indictment for the September 22, 2018 burglary.  On July 17, 2019, Wofford pled not guilty to his two counts and proceeded to trial on September 29, 2020.

¶7.     At trial, several witnesses testified in behalf of the State. Dupuy testified that Wofford was a former employee and had been in his home several times before. Dupuy testified that after the 2015 burglary, he eventually recovered two of the stolen pistols from Wofford, who would later admit at trial that Weaver had sold him "some guns," including a .22-caliber Smith and Wesson pistol, a 9mm Beretta, and two .22-caliber automatics. Wofford had given the guns to his stepbrother, who was a police officer with the Prentiss Police Department in Jefferson Davis County, Mississippi, to ensure the weapons were "clean." Dupuy later retrieved the guns from Wofford's stepbrother.

¶8.     Weaver also testified for the State. He explained that he drove a truck for Wofford

---

[1] Wofford, Weaver, McNally, and Dodson were indicted in count one of the indictment for the 2015 burglary. Wofford, Weaver, Womack, and Love were indicted in count two of the indictment for the 2018 burglary.

from 2012 to 2013. While driving in Pennsylvania, Wofford told him that he had worked for Dupuy and that Dupuy had two safes in his home. Wofford asked Weaver if he could get into the safes, and Weaver responded affirmatively. Wofford explained the layout of Dupuy's home and showed Weaver where Dupuy's home was located. Weaver testified that he committed the 2015 burglary with McNally and Dodson. Weaver admitted that he chose to commit the burglary on August 5, 2015, because Wofford told him that Dupuy's workers would not be present at Dupuy's property on a rainy day.

¶9. When they arrived, Weaver claimed that he did not see anyone around and that the door was open. After entering Dupuy's home, Weaver testified that he only saw one safe. He hit the handle on the safe, and the door opened. Weaver testified that they took money and guns from Dupuy's safe before returning to Weaver's home in Woodlands, Mississippi.

¶10. At Weaver's place, Weaver, McNally, and Dodson proceeded to split up the loot. According to Weaver, they took ten percent off the top for Wofford and split the remaining stolen goods and funds among themselves. Weaver testified that he and Dodson met Wofford in Vardaman, Mississippi, between one and two weeks after the burglary. Weaver got into Wofford's truck, where he gave Wofford his share of the booty from the burglary.

¶11. Weaver also testified regarding the 2018 burglary. He testified that he burglarized Dupuy's home on September 22, 2018, because Wofford told him that Dupuy had been in Baton Rouge all week and that no one would be on the property. Weaver told Wofford he needed a bull pin and some blades to complete the burglary. Wofford called around to different businesses to locate the bull pin. Wofford found the location of the items needed

and informed Weaver where he could get the items. Wofford also supplied Weaver with the grinder he needed to get into the safe.

¶12.   Weaver and Womack drove to Dupuy's home on Thursday, September 20, 2018. When they arrived, Weaver saw "red lights in the shed." Weaver called Wofford to ask him about the lights thinking it was a type of security system. Wofford told him that they were electric fence lights. Weaver decided not to carry out the burglary that night. They returned late the next night, Friday, September 21, 2018. Womack drove Weaver to Dupuy's but then told him to get out because she no longer wanted him in her car. Weaver stated that Womack was supposed to drive him to Dupuy's and drop him off and pick him up, but she did not.

¶13.   Unlike the 2015 burglary, Weaver had to break a window to enter Dupuy's home. Dupuy's safe was locked. Weaver attempted to open it with the tools he brought with him. Weaver testified that he spent three to four hours trying to open Dupuy's safe. After realizing that he could not open it, Weaver decided to take the safe with him. Weaver retrieved Dupuy's tractor and hooked it to the safe before pulling it through Dupuy's window. Since Weaver no longer had transportation to haul the safe, he "borrowed" a Toyota pick-up truck from Dupuy's premises. By the time Weaver had loaded the safe, the truck ran out of gas and would not start. As Weaver attempted to get the truck to start, Dupuy's employees began to return. The ranch hands tried to stop Weaver from getting away, but he ran. Weaver testified that he received a call from Wofford as he was running. Weaver informed Wofford that he was hiding in some bushes. Wofford told Weaver he needed "to get out of there" and told him which direction to travel. Specifically, Weaver stated that Wofford told him to "go down

5

to a bridge and go South." According to Weaver, Wofford told him not to get caught with the cell phone on him. However, Weaver did not listen, figuring that Wofford was trying to get him apprehended by the police. Hiding, Weaver eventually fell asleep but was awoken by a police canine. The police collected the cell phone he had been using, and he was arrested there on September 22, 2018.

¶14.    During questioning, Weaver told Investigator Meaux about the phone calls exchanged with Wofford during the burglary. Based on that information, Investigator Meaux retrieved Weaver's cell phone, Wofford's cell phone, and Wofford's AT&T phone records. Kristy Silva, an intelligence analyst with the Mississippi Bureau of Narcotics, identified 166 deleted call-log entries from Wofford's cell phone at trial. According to Silva, all entries between April 6, 2017, and November 15, 2018 had been deleted. Investigator Meaux testified that Weaver's cell phone and Wofford's AT&T records showed calls between September 21, 2018 and September 22, 2018.

¶15.    Wofford and his wife, Geneva, testified in his behalf. Wofford testified that he met Weaver in November 2014. Wofford denied driving as a team with Weaver in August 2015. Wofford claimed that he did not know anything about the 2015 or the 2018 burglaries. He also denied receiving a share of the 2015 burglary. According to Wofford, he spoke with Weaver on September 21, 2018, regarding a meeting between himself, Weaver, and Lilly about the sale or leasing of a truck. He denied ever speaking about Dupuy's safe or speaking with Weaver regarding guns located at Dupuy's.

¶16.    The jury found Wofford guilty of two counts of burglary of a dwelling. The court

6

sentenced him to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) with the sentences ordered to run concurrently.

¶17. Wofford asserts the following errors on appeal: (I) the evidence was insufficient to prove all the essential elements of burglary of a residential dwelling; (II) jury instruction S-3 constructively amended the indictment and was a misstatement of the law, (III) the circuit court abused its discretion by excluding testimony, and (IV) the circuit court wrongfully denying him bail pending appeal.

**DISCUSSION**

¶18. "This Court reviews sufficiency-of-the-evidence claims de novo." *Jones v. State*, 330 So. 3d 793, 801 (¶22) (Miss. Ct. App. 2021) (citing *Clark v. State*, 315 So. 3d 987, 994 (¶7) (Miss. Ct. App. 2021)). When considering the sufficiency of the evidence, this Court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Hearn v. State*, 3 So. 3d 722, 740 (¶54) (Miss. 2008)). "The evidence is viewed in a light that is most favorable to the State, and the State is given all favorable inferences that can be reasonably drawn from the evidence that was presented at trial." *Id.* (citing *Henley v. State*, 136 So. 3d 413, 415 (¶8) (Miss. 2014)). "If a reasonable trier of fact could evaluate all the evidence and find the essential elements of the charged crime to be proven beyond a reasonable doubt, the court will uphold the jury's verdict." *Id.* (citing *Ronk v. State*, 172 So. 3d 1112, 1129 (¶3) (Miss. 2015)). "Circumstantial evidence is 'evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.'" *Id.* (quoting *Shelton v. State*, 214 So. 3d 250,

7

258 (¶40) (Miss. 2017)).

### I. Whether the circuit court erred by denying Wofford's motion for a directed verdict, his request for a peremptory instruction, and his motion for judgment notwithstanding the verdict.

¶19. Wofford argues that the circuit court should have granted his motions for a directed verdict and judgment notwithstanding the verdict (JNOV) and should have granted his request for peremptory instruction because the State did not present any evidence to satisfy the elements of burglary of a residential dwelling.

¶20. "The sufficiency of the evidence is challenged with a motion for a directed verdict, a request for a peremptory instruction, or a motion for [JNOV]." *Middleton v. State*, 281 So. 3d 858, 862 (¶16) (Miss. Ct. App. 2019) (quoting *Pace v. State*, 242 So. 3d 107, 117 (¶24) (Miss. 2018)). "On review of the sufficiency of the evidence, th[e] [reviewing court] considers the [circuit] [court's ruling at the last time the sufficiency of the evidence was challenged." *Id*. (quoting *Warren v. State*, 187 So. 3d 616, 627 (¶29) (Miss. 2016)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at (¶30). The reviewing court "must accept as true all evidence consistent with . . . guilt." *Id*. (quoting *Robinson v. State*, 940 So. 2d 235, 240 (¶13) (Miss. 2006)). "Where the facts and inferences 'point in favor of the defendant on any element of the offense with sufficient force that reasonable jurors could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is to reverse and render.'" *Carpenter*, 311 So. 3d at 1276 (¶30) (quoting *Dean v. State*, 295 So. 3d 575, 578

8

(¶8) (Miss. Ct. App. 2020)).

¶21. The crime of dwelling-house burglary is defined as follows:

> Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

Miss. Code Ann. § 97-17-23(1) (Rev. 2014). Hence, the elements of burglary of a dwelling are "(1) unlawful breaking and entering, and (2) intent to commit a crime therein." *Ward v. State*, 285 So. 3d 136, 140 (¶16) (Miss. 2019).

¶22. Wofford asserts that the indictment charged him with burglaries of a dwelling and that the State failed to present any evidence that he broke, entered, or stole anything from Dupuy's home. Wofford further asserts that his indictment only charged him with the crimes of burglary and not with aiding and abetting others who were committing burglaries. Despite Wofford's assertions, he was indicted for the crimes of burglary as a principal based on his actions as an accessory before the fact. Specifically, Wofford's indictment charged him with "acting in concert" with Weaver, McNally, and Dodson to commit a burglary of a dwelling in August 2015 and for "acting in concert" with Weaver, Womack, and Love to commit a burglary of a dwelling in September 2018. "When two people act in concert or when one person aids another in . . . committing a crime, both are equally guilty as principals in the eyes of the law." *Lipsey v. State*, 756 So. 2d 823, 825 (¶4) (Miss. Ct. App. 2000) (citing *Harris v. State*, 527 So. 2d 647, 649 (Miss. 1988)).

¶23. For Wofford to be convicted of burglaries of a residential dwelling, it is not necessary

9

to prove he committed the burglaries himself, only that he acted in concert with Weaver, McNally, and Dodson in August 2015 and Weaver, Womack, and Love in September 2018 or aided and abetted these parties in burglarizing Dupuy's home. *See Story v. State*, 296 So. 3d 104, 116 (¶40) (Miss. Ct. App. 2019) (citing *Sneed v. State*, 31 So. 3d 33, 41 (¶24) (Miss. Ct. App. 2009)); *see also Dampier v. State*, 973 So. 2d 221, 231 (¶28) (Miss. 2008). It is well established under Mississippi Code Annotated section 97-1-3 (Rev. 2014) that "an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such." *Jones*, 238 So. 3d at 1240 (¶12) (internal quotation mark omitted).

¶24. The jury heard testimony that Wofford was formerly employed by Dupuy and knew the location of Dupuy's safes. Weaver testified that Wofford asked Weaver if he could get into the safes, and Weaver responded that he thought he could. Weaver also stated that Wofford showed him Dupuy's house several times, and Wofford told Weaver that he would find ten to twenty thousand dollars laying around. Weaver testified that for the August 2015 burglary, Wofford received approximately ten percent of the money obtained from the burglary. For the September 2018 burglary, the jury heard testimony that Wofford told Weaver that Dupuy would be out of town and provided Weaver with information and tools to aid in breaking into Dupuy's safes.

¶25. Here, the evidence showed that Wofford aided, counseled, and encouraged his co-defendants to commit the burglaries. Upon review, considering the evidence in the light most favorable to the State, we find this evidence is sufficient to show Wofford aided and abetted

his co-defendants in the burglary of Dupuy's home. Thus, Wofford's motions for a direct verdict and JNOV and his request for a peremptory instruction were properly denied.

## II. Whether the circuit court erred in giving jury instruction S-3.

### A. Constructive Amendment of Wofford's Indictment

¶26. "Jury instructions are generally within the discretion of the circuit court, and the settled standard of review is abuse of discretion." *Dennis v. State*, 271 So. 3d 661, 663 (¶8) (Miss. Ct. App. 2018) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012)). The instructions "are to be read together as a whole, with no one instruction to be read alone or taken out of context. When read together, if the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found." *Id*. Although "a defendant is entitled to have jury instructions given [that] present his theory of the case; . . . this entitlement is limited in that the court may refuse an instruction [that] incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Id*. (internal quotation mark omitted).

¶27. At the end of the trial, the circuit court gave jury instruction 8 (also labeled as jury instruction S-3) as an accomplice-liability instruction. The instruction given was the aiding-and-abetting jury instruction adopted by the Mississippi Supreme Court in *Milano v. State*, 790 So. 2d 179, 185 (¶21) (Miss. 2001). That instruction reads:

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

¶28. Wofford argues that the State's jury instruction S-3 on accomplice liability constructively amended the indictment because it expanded the scope under which he could be found guilty. He argues that by giving jury instruction S-3, his theory of defense "went down the drain." However, Wofford's argument is without merit, as we have previously held that a circuit court may give an accomplice-culpability instruction without constructively amending an indictment. *Taylor v. State*, No. 2018-KA-00534-COA, 2020 WL 2394027, at *7 (¶35) (Miss. Ct. App. 2020).

¶29. Our supreme court has stated:

A constructive amendment of an indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged. A constructive amendment of an indictment is reversible per se. Reversal is automatic because the defendant may have been convicted on a ground not charged in the indictment.

12

*Id.* at (¶34) (quoting *Graham v. State*, 185 So. 3d 992, 1001 (¶25) (Miss. 2016)). However, "[n]ot all variances between the indictment and instructions constitute a constructive amendment." *Id.* The operative question is "whether the variance is such as to substantially alter the elements of proof necessary for a conviction." *Id.*

¶30. An accomplice-culpability instruction may be given by a circuit court without constructively amending an indictment. *Id.* at (¶35) (citing *Jones v. State*, 238 So. 3d 1235, 1239-40 (¶11) (Miss. Ct. App. 2016)). This is because "under the statutory language of Mississippi Code Annotated section 97-1-3 (Rev. 2006), an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such." *Id.* (internal quotation mark omitted) (quoting *Jones*, 238 So. 3d at 1240 (¶12)). We held that "[t]he clear language of section 97-1-3, as well as the holdings of both this Court and the Mississippi Supreme Court interpreting and applying that provision, provide[s] sufficient notice to felony defendants that although they may be indicted as a principal, a jury instruction based on accomplice liability is proper, provided that 'the evidence presented supports the instruction given.'" *Jones*, 238 So. 3d at 1240 (¶12).

¶31. Wofford's indictment charged him with "acting in concert" with his co-defendants to burglarize Dupuy's home. In Part I above, we have already addressed—and rejected—Wofford's assertions that the evidence presented to the jury was insufficient to support the verdict against him. In the same manner, the evidence presented at trial also supported the circuit court's decision to give an accomplice-liability jury instruction.

¶32. We reiterate that our caselaw does not prohibit an accomplice instruction when

accomplice liability is not charged in the indictment. *Id*. at (¶13); *see Pratt v. State*, 870 So. 2d 1241 (Miss. Ct. App. 2004). We find that the accomplice-liability jury instruction did not constructively amend Wofford's indictment because our law holds that an accomplice to a felony before the fact is liable as a principal. *See Johnson v. State*, 956 So. 2d 358, 363 (¶12) (Miss. Ct. App. 2007). Therefore, Wofford's argument that the accomplice-liability instruction constructively amended the indictment is without merit.

### B.    Misstatement on a Material Matter of Law

¶33.    Wofford further argues that the court erred by giving jury instruction S-3 because Mississippi precedent requires an aider and abettor to be "present at the commission of the subject criminal offense." Wofford's counsel specifically objected to the jury instruction, arguing that the State was attempting to find his client guilty on a different charge since they failed to prove that Wofford broke and entered into Dupuy's home with the intent of committing a crime or that Wofford removed anything from the house.

¶34.    Wofford was indicted and convicted as a principal for the crime of burglary. However, Wofford was not present at the time of the burglaries. His culpability is as an accessory before the fact. "[T]o be convicted as a principal [Wofford] must either have aided or abetted his co[-]defendant or have been an accessory before the fact." *Willis v. State*, 300 So. 3d 999, 1007 (¶24) (Miss. 2020) (citing *Pace v. State*, 242 So. 3d 107, 119 (¶33) (Miss. 2018)). "The difference between the two is that an aider or abettor is actually or constructively present at the offense, while an accessory before the fact is not." *Id*. (internal quotation marks omitted) (quoting *Dilworth v. State*, 909 So. 2d 731, 734 (¶12) (Miss. 2005)).

¶35.    It is well settled what renders a person an accessory before the fact. "An accessory before the fact must actually advise and procure commission of the crime, encourage, aid and abet its commission, help plan the crime with the understanding he will benefit from it." *Malone v. State*, 486 So. 2d 360, 363 (Miss. 1986) (citing *James v. State*, 248 Miss. 777, 160 So. 2d 695, 696 (1964)). Thus, "[o]ne who is an accessory before the fact or one who aids and abets necessarily enters into an agreement that an unlawful act will be done. He participates in the design of the felony." *Id*. at 364.

¶36.    As stated above, jury instruction S-3 conforms with prior holdings of this Court. Our supreme court has defined accessory before the fact as "one who procures, counsels or commands another to commit a felony for him, but is not himself present, actually or constructively, when the felony is committed." *Johnson v. State*, 290 So. 3d 1232, 1237 (¶18) (Miss. 2020) (quoting *Huff v. Edwards*, 241 So. 2d 654, 657 (Miss. 1970)). "The concept of an accessory before the fact involves some participation in the criminal act." *Id*. (quoting *Clemons v. State*, 482 So. 2d 1102, 1105 (Miss. 1985)).

¶37.    To support his contention that he had to be physically present at the time of the burglaries to be convicted as a principal based on his actions as an aider and abettor, Wofford relies on *Milano v. State*, 790 So. 2d 179 (Miss. 2001). While such applies to aiding and abetting, it is misplaced. Wofford was indicted and convicted as a principal based on his actions as an accessory before the fact.

¶38.    In response to Wofford's argument, the State relies on *Malone*, where a defendant was convicted for armed robbery as an accessory before the fact. *Malone*, 486 So. 2d at 363. The

15

Mississippi Supreme Court affirmed a jury instruction advising the jury of the concepts of aiding and abetting and specific intent finding that other jury instructions cured any alleged deficiencies in the instruction. *Id*. at 364. The State further relies on *Story v. State*, 296 So. 3d 104, 117 (¶41) (Miss. Ct. App. 2019), where this Court affirmed the granting of the *Milano* instruction where a defendant "acted in concert" or "aided and abetted" with his co-defendants.

¶39. As previously mentioned, "[o]ne who aids and abets another is an accessory before the fact and is guilty as a principal." *Walton v. State*, 752 So. 2d 452, 457 (¶16) (Miss. Ct. App. 1999) (quoting *Williams v. State*, 463 So. 2d 1064, 1066 (Miss. 1985)). It is undisputed that Wofford was not physically present at the time of the burglaries. However, there were several testimonies showing Wofford aided his co-defendants in the commission of the crimes. Wofford told Weaver where Dupuy's house and safe were located, when the property would be empty, obtained tools needed to complete the 2018 burglary, and he spoke with Weaver the day before the burglary, and on the day Weaver committed it. There was testimony that Wofford also received ten percent of the money from the 2015 burglary and had Dupuy's stolen guns in his possession. The intelligence analyst, Silva, identified 166 deleted call-log entries from Wofford's cell phone at trial. Investigator Meaux testified that Weaver's cell phone communications, and the deleted phone entries from Wofford's AT&T records coincided with each other.

¶40. We find that jury instruction S-3 did not contain "a misdirection to the jury on a material matter of law," as argued by Wofford. We find that sufficient evidence existed to

present an accomplice-liability instruction to the jury. A circuit court may refuse an instruction if it incorrectly states the law or if it is without foundation in the evidence. We find that the theory of accessory before the fact was not without foundation and was an issue within the realm for a jury to decide. Also, when reading the instructions as a whole, we find no error.

### III. Whether the circuit court erred in granting the State's motion in limine prohibiting testimony regarding the amount of money and items taken from Dupuy's safe.

¶41. Wofford argues that the court denied his constitutional right to confront witnesses testifying against him by granting the State's motion in limine. He asserts that he should have been allowed to cross-examine Dupuy, Weaver, and Dodson regarding the amount of money taken from the safe in 2015. Wofford claimed that the amount of money was a matter that went to the witnesses' credibility. The State filed a motion in limine to exclude testimony regarding the amount of cash in Dupuy's safe and to prohibit testimony regarding the amount of money claimed to have been taken.

¶42. "A trial court has great latitude in [the] admission or exclusion of evidence where the question is one of materiality or relevancy[.]" *Watkins v. State*, 29 So. 3d 807, 810 (¶7) (Miss. Ct. App. 2009). Thus, "[a]n error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party." *Aguilar v. State*, 955 So. 2d 386, 392 (¶19) (Miss. Ct. App. 2006). We review the circuit court's admission of evidence for an abuse of discretion. *Clark v. State*, 326 So. 3d 510, 517 (¶17) (Miss. Ct. App. 2021) (citing *Boggs v. State*, 188 So. 3d 515, 519 (¶9) (Miss. 2016)).

17

¶43. "The Confrontation Clause of the Sixth Amendment of the United States Constitution provides, 'In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him.'" *Ambrose v. State*, 254 So. 3d 77, 100 (¶51) (Miss. 2018) (quoting *White v. State*, 785 So. 2d 1059, 1062 (¶9) (Miss. 2001)). Likewise, "Article 3, Section 26, of the Mississippi Constitution grants and guarantees a criminal defendant the right to confront witnesses against him." *Id*. (quoting *Young v. State*, 731 So. 2d 1145, 1151 (¶38) (Miss. 1999)). "The right of confrontation extends to and includes the right to fully cross-examine the witness on every material point relating to the issue to be determined that would have a bearing on the credibility of the witness and the weight and worth of his testimony." *Id*.

¶44. "While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id*. (quoting *Holmes v. South Carolina*, 126 S.Ct 1727, 1731 (2006) ("Plainly referring to rules of this type, we have stated that the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues.").

¶45. Mississippi Rule of Evidence 611(b) allows wide open cross-examination of witnesses. MRE 611(b). The Mississippi Rules of Evidence define evidence as relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the

evidence; and (b) the fact is of consequence in determining the case." MRE 401. "[T]he threshold for admissibility of relevant evidence is not great. Evidence is relevant if it has any tendency to prove a consequential fact." *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (¶27) (Miss. 2003) (internal quotation marks omitted) (quoting *Whitten v. Cox*, 799 So. 2d 1, 15 (¶35) (Miss. 2000)). Rule 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible." MRE 402.

¶46. Here, the circuit court ultimately found that testimony regarding the amount of money in Dupuy's safe and the amount of money claimed to have been taken in 2015 was irrelevant. Before trial, the circuit court heard arguments on the State's motion and reaffirmed his ruling, stating:

> The Court has already ruled on this that the amount of money taken wouldn't be discussed because it's not relevant to the elements of the crime. It would be like if we allowed someone to say, well, they stole a diamond ring, and I think it's worth $35,000, and somebody else thinks it's worth $3500. That's not relevant to a burglary. For a burglary, somebody breaks and enters with intent to commit a crime, and if they actually take things, you can get into what they actually took. Was it cash? Was it a TV? Was it a Remington? Was it a Glock, you know. But the amount of money, I just can't see has anything to do with this case. So the Court is going to - - that ruling is going to remain. We won't be talking about the amount of money taken from the victim's house. I just don't see that it's relevant.

The circuit court allowed the defense to make a proffer at trial outside the jury's presence. Our supreme court "has underscored the need for a full proffer on the record so that the appellate court can properly evaluate the propriety of a [circuit] court's exclusion of

19

evidence." *Dille v. State*, No. 2019-KA-00855-COA, 2021 WL 3732274, at *10 (¶45) (Miss. Ct. App. Aug. 24, 2021) (citing *Jones v. State*, 306 So. 2d 57, 58 (Miss. 1975)), *cert denied*, 334 So. 3d 1161 (Miss. 2022). "The right to preserve testimony through an appropriate offer of proof is essential to ensure justice and fairness. This is especially true in criminal trials where the broadest latitude is permitted on cross-examination." *Id.*

¶47. In its proffer, the defense argued that the evidence revealed discrepancies from the witnesses regarding the amount of money taken from Dupuy's safe. However, as previously mentioned, the State was required to prove every material element of burglary of a dwelling: "(1) unlawful breaking and entering, and (2) intent to commit a crime therein." *Ward*, 285 So. 3d at 140 (¶16). The State was not required to prove that a certain amount of money was taken for Wofford to be convicted. Thus, the exact amount of money taken from Dupuy's safe holds no relevance to Wofford's charges. We find the circuit court did not abuse its discretion in excluding the testimony as irrelevant.

¶48. While we find that the circuit court did not abuse its discretion by excluding testimony regarding the amount of money taken from Dupuy's safe, we note that if any error occurred, it was harmless and does not require reversal. An error will be deemed harmless "where 'the same result would have been reached had it not existed.'" *Pitchford v. State*, 45 So. 3d 216, 235 (¶71) (Miss. 2010) (quoting *Tate v. State*, 912 So. 2d 919, 926 (¶18) (Miss. 2005)).

¶49. Here, the State provide overwhelming evidence establishing that Wofford planned both burglaries, provided tools and information to his co-defendants, and received money and property from the 2015 burglary. Based on the overwhelming testimony and evidence, the

circuit court's ruling was, at the most, harmless error.

**IV. Whether the circuit court erred by denying Wofford's request for bond pending appeal.**

¶50. Wofford next argues that the circuit court erred by denying his request to be released on bail pending his appeal. The State argues that the circuit court correctly denied Wofford's request to be released on bail pending appeal under Mississippi Code Annotated section 99-35-115(2)(a) (Rev. 2020).

¶51. "[B]ail is a fundamental, constitutionally protected right." *Fairley v. State*, 275 So. 3d 1012, 1026 (¶72) (Miss. 2019) (quoting *Benson v. State*, 551 So. 2d 188, 194 (Miss. 1989)). "That right, however, is not automatic, and the decision to grant or deny bail rests in the sound discretion of the judicial officer." *Id*. (internal quotation omitted). "If bail [pending appeal] is denied, the judicial officer shall place the reasons for such denial of record in the case." *Id*. (citing Miss. Code Ann. § 99-35-115(2)(b)). Furthermore, "denial of bail is not a ground for reversal of the judgment [of conviction or sentence] rendered against the defendant." *Id*. at (¶73) (quoting *Benson*, 551 So. 2d at 195).

¶52. Here, the circuit court followed the statutory requirements of section 99-35-115 in evaluating Wofford's request and stating for the record its reason for denying the request. The circuit court found that Wofford was "the mastermind" of the 2015 and 2018 burglaries of Dupuy and that Wofford "recruited people to do this crime, he gave the instructions when to go, and he talked [his co-defendants] through it." In its ruling, the circuit court further stated:

> The defendant is a repeat offender of these violent crimes. The crimes

were not random. He twice specifically targeted the victim, who was his friend and former employer. He was the only person involved in these crimes who had extensive knowledge of the victim's home, property, and work/business schedules. Defendant recruited his co-defendants, gave instructions when to go and talked them through it. He was actively involved in burglarizing Mr. Dupuy's home not once, but twice. The defendant constitutes a special danger against Dupuy, and has not shown by clear and convincing evidence otherwise.

The defendant has not shown by clear and convincing evidence that a condition or combination of conditions may be placed on his release that will reasonably assure his appearance as required. The defendant is forty-five years old, married, with three children. He is facing twenty-five years in prison for a violent offense. The defendant resides in Louisiana and is a long-haul truck driver who routinely drives across the county. At trial, the State proved that the defendant went to great lengths to cover up his role in these crimes. He deleted calls to his co-defendants from his phone, used his wife's phone to communicate with co-defendants, and he lied to Dupuy and law enforcement. Because of these factors, the court finds that there is no combination of conditions that would reasonably assure his appearance.

Finally, the defendant has not shown by clear and convincing evidence that the peculiar circumstances of the case render bail proper. On the contrary, as discussed, the peculiar circumstances of the case show that bail is improper. There is no evidence before the court which would overcome the facts to support granting bail.

¶53. The circuit court found that Wofford failed to prove that his release would not constitute a special danger to another person or to the community. *See* Miss. Code Ann. § 99-35-115(2)(a); Miss. Const. art. 3, § 29; *see also Parks v. State*, 228 So. 3d 853, 871-72 (¶¶73-74) (Miss. Ct. App. 2017). Specifically, the circuit court found that Wofford represented a special danger to Dupuy. Miss. Code Ann. § 99-35-115(2)(a). The record evidence supports the circuit court's findings, and we cannot find that the circuit court abused its discretion in denying Wofford's request for bail.

**CONCLUSION**

22

¶54. Finding no reversible error, we affirm Wofford's convictions and sentences.

¶55. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**